IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Honghushi Warren Electronic Commerce Co. LTD, | |
| Plaintiff, | Civil Action No.: 25-cv-08109 |
| v. | Judge Steven C. Seeger |
| Skull Candy Limited, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Zhongshan Honghushi Warren Electronic Commerce Co. LTD ("Plaintiff") respectfully submits this Memorandum of Law in support of its Ex Parte Motion for Entry of a Temporary Restraining Order ("TRO Motion"). Plaintiff seeks narrowly tailored relief requiring Defendant Skull Candy Limited ("Defendant") to (1) withdraw its takedown complaint to Amazon and (2) take immediate steps to prevent the destruction or disposal of Plaintiff's inventory while this action is pending.

**I.      INTRODUCTION**

Plaintiff respectfully seeks a Temporary Restraining Order ("TRO") to prevent Amazon from taking irreversible action against its frozen inventory, including removal, disposal, or liquidation, pursuant to Amazon's Fulfillment by Amazon Inventory Storage and Removal Policy. These actions stem from Defendant's unsupported trademark complaint, which triggered the enforcement process that now threatens over 20,000 units of inventory valued at approximately $167,424. Unless the Court intervenes by August 27, 2025, Amazon may dispose of these goods

under its stated policy, causing irreparable harm to Plaintiff's business operations, customer relationships, and reputation.

The inventory at issue represents a significant portion of Plaintiff's assets and is essential to fulfilling customer orders and maintaining marketplace presence. If Amazon proceeds with disposal, Plaintiff will suffer irreparable harm, including lost sales, damage to customer relationships, and erosion of brand goodwill. These harms cannot be remedied through monetary compensation alone.

Amazon has indicated that it may begin removing inventory as early as August 27, 2025. Plaintiff therefore respectfully requests immediate judicial intervention and the entry of a Temporary Restraining Order on an ex parte basis to preserve the status quo and prevent permanent business losses.

## II.   STATEMENT OF FACTS

Plaintiff Honghushi Warren Electronic Commerce Co. LTD is a privately held Chinese company that operates the Amazon storefront "stbeyond" and sells a line of cookie cutter products under the MAGIGIFT trademark. Plaintiff has continuously used the MAGIGIFT mark in U.S. commerce since at least June 7, 2018.

Plaintiff owns a valid and enforceable federal trademark registration for the MAGIGIFT mark. The application was filed with the United States Patent and Trademark Office on January 20, 2019, and the mark was registered on July 30, 2019, under U.S. Trademark Registration No. 5,821,390. The registration covers a range of goods, including barrettes, elastic ribbons, hair accessories, and other related items. A true and correct copy of the registration is attached as Exhibit A. The mark was registered under the name Honghu Wolun Electronic Commerce Co.,

Ltd., a Chinese entity that is affiliated with Plaintiff and shares the same principal business address. The variation in entity names appears to result from differences in English-language translation.

A substantial portion of Plaintiff's business is conducted through Amazon. The platform serves as Plaintiff's primary sales channel in the United States and an important venue for its international operations. Plaintiff has made significant investments in product development, manufacturing, and marketing to build its brand reputation and customer base on Amazon.

On October 24, 2023, the USPTO issued U.S. Trademark Registration No. 7,201,807 to Defendant Skull Candy Limited. That registration covers kitchenware products similar to those sold under the MAGIGIFT brand. Defendant did not file the application for this mark until September 25, 2022, more than four years after Plaintiff began using the MAGIGIFT mark in U.S. commerce. A true and correct copy of Defendant's registration is attached as Exhibit B.

On or about June 27, 2025, Defendant filed a series of trademark complaints with Amazon alleging that Plaintiff's MAGIGIFT-branded products infringe Defendant's recently registered mark. A true and correct copy of Amazon's notice is attached as Exhibit C. Based solely on Defendant's notice, Amazon suspended Plaintiff's listings for at least five key products, ASINs: B07V5LV584, B083QLRBLK, B08577SWTR, B089KFK4Q7, and B08ZNLBJP7 and placed Plaintiff's inventory under restraint.

On July 27, 2025, Amazon notified Plaintiff that more than 20,000 units of its inventory had been frozen. That inventory has a total estimated value of $167,424. Amazon also indicated that unless the issue is resolved, a portion of the frozen inventory would be removed and destroyed starting on August 27, 2025. Plaintiff attempted to contact Defendant to resolve the matter amicably, but Defendant has refused to withdraw the complaint or engage in any meaningful discussions. As a result, Plaintiff's ability to conduct business has been severely impacted. A true

and correct screenshot of Plaintiff's current Amazon inventory, showing the listings remain blocked and unavailable for sale, is attached as Exhibit G. Sales on Amazon fell from $69,641.28 in June 2025 to $15,962.15 in July 2025, reflecting a drop of more than 75 percent.

Plaintiff now seeks urgent relief to prevent Amazon from destroying its inventory and to preserve the status quo. Without intervention from the Court, Plaintiff will suffer irreparable harm in the form of lost inventory, customer goodwill, and revenue, none of which can be fully remedied by monetary damages.

### III. ARGUMENT

**Applicable Standards**

A temporary restraining order is an extraordinary remedy, but it is appropriate where the facts support urgent relief to prevent immediate and irreparable harm. Both temporary restraining orders and preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure.

In the Seventh Circuit, a temporary restraining order sought with notice to the adverse party is evaluated under the same standard as a preliminary injunction. *See Budget Rent A Car Corp. v. Harvey Kidd Automotive*, 249 F. Supp. 2d 1048, 1049 (N.D. Ill. 2003). To obtain injunctive relief, the moving party must demonstrate: (A) A likelihood of success on the merits; (B) A likelihood of suffering irreparable harm in the absence of preliminary relief; (C) That the balance of equities favors the moving party; and (D)That the requested relief serves the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

At the threshold stage, the plaintiff must make a modest showing that its claim has a better than negligible chance of success. *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982). If this showing is made and the balance of harms clearly favors the

plaintiff, the Court may issue injunctive relief even if the likelihood of success is not overwhelming. The analysis is flexible and considers the sliding scale between likelihood of success and the degree of harm.

This framework supports immediate relief where, as here, Plaintiff's core business is being dismantled through an improper takedown notice that Amazon acted upon without judicial review. The loss of inventory, disruption to business operations, and destruction of goodwill satisfy the standard for irreparable harm.

### A. Plaintiff Will Likely Succeed on the Merits

Plaintiff's use of the MAGIGIFT mark predates any rights claimed by Defendant and forecloses any plausible allegation of trademark infringement. Plaintiff began using the MAGIGIFT mark in U.S. commerce as early as June 7, 2018, in connection with cookie cutters and related kitchen products. This use has been continuous and nationwide through Plaintiff's Amazon storefront "stbeyond."

On January 20, 2019, Plaintiff filed an application to register the MAGIGIFT mark. That application matured into U.S. Trademark Registration No. 5,821,390 on July 30, 2019. The registration covers a broad category of goods in Class 26, including elastic ribbons, barrettes, hair ties, and related accessories. A true and correct copy of the registration certificate is attached as Exhibit A.

Plaintiff has invested significant resources to promote the MAGIGIFT brand and has fulfilled more than 100,000 customer orders. Plaintiff's Amazon storefront remains a key channel of distribution and brand development. Advertising records and representative order history are attached as Exhibits D and E.

Defendant, by contrast, filed its application for the MAGIGIFT mark on September 25, 2022. That application did not register until October 24, 2023, under U.S. Trademark Registration No. 7,201,807. Defendant's rights are therefore junior to Plaintiff's by more than four years. It is well established that trademark rights are acquired through use, not registration. The first to use a mark in commerce has priority over later users, even those with a subsequent registration. See *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). Plaintiff's senior use and valid registration preclude any finding of infringement as a matter of law. Plaintiff is the senior user, the senior registrant, and the rightful owner of the MAGIGIFT mark. Plaintiff is likely to prevail on its claim that it does not infringe Defendant's mark and is entitled to continued use of MAGIGIFT in U.S. commerce.

### B. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief to Prevent Amazon to Destroy the Inventory

Plaintiff urgently seeks equitable protection to prevent the destruction of valuable inventory and the continued disruption of its business operations. The threatened harm is immediate, concrete, and cannot be redressed through monetary damages alone. Specifically, Plaintiff faces the imminent destruction of more than $167,000 in frozen inventory, the permanent loss of business assets and fulfillment capacity, and a dramatic drop in sales volume. Plaintiff also faces the risk that any future monetary judgment will be effectively unenforceable due to Defendant's foreign status and evasive conduct. The harm is compounded by reputational damage, loss of customer goodwill, and an ongoing inability to compete in the marketplace. Without immediate judicial intervention, these harms will continue to escalate and may jeopardize Plaintiff's business entirely.

i. <u>Destruction of Inventory and Permanent Loss of Assets</u>

Plaintiff's inventory, valued at more than $167,000, is currently frozen by Amazon and scheduled for disposal beginning August 27, 2025. This inventory represents a significant portion of Plaintiff's business assets and reflects substantial investment in manufacturing, logistics, and product storage. Exhibit G confirms that this inventory is currently frozen and unavailable for sale on Amazon's platform. If the Court does not intervene, this inventory will be irretrievably lost.

Courts have consistently recognized that destruction of goods constitutes irreparable harm. Once destroyed, the products cannot be recovered, sold, or used to fulfill existing or anticipated customer orders. The financial and reputational losses tied to this outcome cannot be remedied through post hoc damages. Plaintiff's right to contest the underlying allegations in a judicial forum would be rendered meaningless if the inventory is destroyed before this case is resolved. Importantly, Defendant suffers no prejudice if Plaintiff's listings and inventory are preserved during the pendency of this matter. In contrast, Plaintiff's loss would be immediate and permanent.

ii. <u>Monetary Judgment Against the Trademark Owner is Uncertain Due to It's Conduct</u>

The inability to secure an enforceable monetary judgment against Defendant further justifies equitable relief. Defendant has used Amazon's reporting mechanisms to cause significant commercial disruption to Plaintiff's business, all while taking steps to avoid accountability in this forum. As a foreign entity with no known attachable assets in the United States, Defendant's conduct reflects a calculated effort to weaponize e-commerce enforcement tools from a safe distance. It files takedown complaints to trigger devastating consequences for competitors, but refuses to engage in any meaningful process to defend or justify its claims. This approach frustrates the purpose of Amazon's system and deprives Plaintiff of any realistic path to recover losses through a final money judgment.

Courts have routinely recognized that this kind of evasive behavior from overseas parties increases the risk that even a favorable judgment will go uncollected. See *Peng v. Partnerships*, 2021 U.S. Dist. LEXIS 174254, at *7–8 (N.D. Ill. Sept. 14, 2021). That is precisely the concern here.

Plaintiff is faced with a Defendant that uses a U.S. based platform to impose commercial harm but shields itself from the consequences. This dynamic leaves Plaintiff in a uniquely vulnerable position. If the Court does not act now, Plaintiff's inventory may be destroyed, its operations may collapse, and its market position may be lost and all without any practical remedy.

Plaintiff has no adequate legal alternative. The freeze imposed by Amazon, at Defendant's urging, has already caused a dramatic drop in revenue and is scheduled to culminate in the destruction of over $167,000 in physical product. In contrast, Defendant would suffer no hardship from an injunction directing Amazon to preserve the status quo while this litigation proceeds. The equities favor Plaintiff, and the uncertainty of monetary recovery strongly supports the need for immediate equitable intervention.

 iii. <u>Loss of Customers, Market Share, and Business Opportunities</u>

Plaintiff relies heavily on Amazon as its primary sales channel, generating a significant portion of its revenue through the platform. The inventory freeze initiated by Amazon, at the direction of Defendant's takedown notices, has already disrupted Plaintiff's ability to fulfill customer orders. This has led to canceled transactions, loss of repeat buyers, and reputational harm among customers who previously viewed Plaintiff as a reliable seller.

If Plaintiff's inventory is destroyed, many of its customers will turn to competitors to meet their needs. These customers are unlikely to return, resulting in a permanent loss of market share. Plaintiff will also be unable to implement planned marketing and promotional campaigns tied to

the affected products, further diminishing its competitive position. Courts have long recognized that the loss of market share and the inability to compete effectively constitute irreparable harm. See *Black & Decker v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 86990, at *11 (N.D. Ill. Nov. 29, 2006) (recognizing loss of market share as a key consideration in determining whether a plaintiff has suffered irreparable harm).

The harm is already measurable. After Defendant's notices were filed at the end of June 2025, Plaintiff's monthly revenue declined sharply. In July 2025, Plaintiff's sales totaled $15,962.15, as compared to $69,641.28, in June 2025 and $76,037.02 in July 2024. These figures reflect a more than seventy-five percent drop year-over-year and confirm that Defendant's conduct has significantly disrupted Plaintiff's operations. A true and correct copy of Plaintiff's recent sales data is attached as Exhibit F.

Without timely judicial intervention, Plaintiff will continue to lose market position, customer loyalty, and business momentum. These harms cannot be repaired through monetary relief after the fact. They require immediate equitable protection to preserve the viability of Plaintiff's business.

    iv.  <u>Damage to Reputation and Goodwill</u>

Defendant's unsupported infringement allegations caused Amazon to suspend Plaintiff's listings through its trademark infringement notice process. This action conveys a false impression of misconduct to customers, distributors, and business partners. The suspension, along with the risk of inventory destruction, significantly undermines Plaintiff's hard-earned reputation for quality and reliability.

Customers who encounter unavailable listings or marketplace warnings may wrongly assume that Plaintiff's products are defective or subject to legal violations. These negative

inferences are difficult to dispel and can permanently damage the trust Plaintiff has built over years of doing business. The resulting loss of goodwill affects not only immediate sales, but also future brand loyalty, visibility, and market opportunities. Courts have consistently held that harm to reputation and goodwill constitutes irreparable injury. See *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (recognizing damage to reputation and goodwill as a proper basis for injunctive relief).

      v. <u>Immediate Injunctive Relief is Necessary</u>

Plaintiff has presented credible defenses to Defendant's infringement allegations and has clearly demonstrated its senior rights in the MAGIGIFT mark, as set forth in the accompanying complaint. Despite this, Amazon's internal policy allows for the destruction of inventory based solely on the filing of a trademark complaint, without regard to the merits of the underlying dispute.

This procedural gap places Plaintiff's business in immediate jeopardy. Absent swift judicial intervention, Plaintiff's inventory will be destroyed, causing permanent loss of assets, customers, and goodwill. The urgency of this situation requires prompt relief to preserve the status quo and protect Plaintiff's right to continue operating while this dispute is resolved in a proper judicial forum.

**C. The Balancing of Harms Favors Declaratory Judgment Plaintiff**

The balance of hardships favors Plaintiff. As established above, Plaintiff has shown a strong likelihood of success on the merits. Plaintiff also faces severe and irreparable harm if relief is not granted, including the potential loss of valuable inventory, disrupted operations during a critical sales period, diminished customer relationships, and long-term reputational harm. These injuries are immediate, substantial, and cannot be remedied through monetary compensation alone.

In contrast, Defendant faces no comparable harm. Any consequences to Defendant stem from its own conduct, including the use of Amazon's takedown process to assert untested infringement claims while avoiding judicial review. Preserving the status quo will not impair Defendant's rights or business activities but will prevent Plaintiff from suffering avoidable harm. Given the nature and extent of the harm to Plaintiff, and the absence of any legitimate prejudice to Defendant, this factor strongly supports injunctive relief.

D.  **A Temporary Restraining Order Will Not Harm the Public Interest**

The public interest strongly supports the issuance of a temporary restraining order in this case. First, Defendant has misused Amazon's trademark infringement notice process to cause significant commercial harm to Plaintiff without subjecting its claims to judicial review. This type of private enforcement, carried out without legal scrutiny, undermines confidence in intellectual property enforcement and invites abuse. Granting relief helps restore the integrity of that process. Second, the public has a recognized interest in maintaining fair competition, especially on platforms like Amazon that serve as primary sales channels for small and mid-sized businesses. Defendant's conduct threatens to drive Plaintiff out of the marketplace through unsupported trademark claims. Preventing this outcome protects consumer access to diverse products and promotes healthy market competition.

Third, trademark rights should be exercised responsibly, not as a means of pressuring competitors without legal justification. Allowing a business to weaponize intellectual property rights in this way harms not only the accused party but also the public's trust in the system. Injunctive relief reinforces the principle that such rights must be enforced through proper legal channels.

Finally, judicial oversight is essential to the fair resolution of intellectual property disputes. If Defendant's allegations are permitted to take effect without any review by this Court, it sets a dangerous precedent. The courts and not private enforcement tools should determine whether a party's trademark rights have been violated. For these reasons, the requested temporary restraining order advances the public interest by preventing abuse, protecting lawful businesses, promoting competition, and reinforcing the central role of the judiciary.

## CONCLUSION

The threat of imminent and irreparable harm to Plaintiff's business operations, customer relationships, and brand reputation cannot be overstated. Without immediate intervention, Plaintiff faces the loss of valuable inventory and the disruption of its ability to operate during the most critical period of the retail year. These injuries cannot be remedied through monetary relief. In contrast, Defendant faces no comparable hardship and has offered no legitimate justification for its attempt to disrupt Plaintiff's business outside of judicial review.

Accordingly, Plaintiff respectfully requests that the Court issue a Temporary Restraining Order compelling Defendant to instruct Amazon to release the frozen product listings and prohibiting Amazon from disposing of Plaintiff's inventory. This relief is necessary to preserve the status quo and to ensure that Plaintiff may pursue resolution of this dispute through the proper legal process, without suffering irreversible harm.

Dated: August 11, 2025

Respectfully submitted,

Alexander Warden, Esq.
Alexander.warden@walflaw.com
West Atlantic Law Firm, PLLC
104 West 40th Street, 4th and 5th Floor
New York, NY 10018
*Attorney for Plaintiff,*
*Honghushi Warren Electronic Commerce Co. LTD.,*